UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CYNTHIA ROETHEL,                                            :
                                                            :
                              Plaintiff,                    :
                                                            :          **MEMORANDUM AND ORDER**
                    -against-                               :          23-cv-7894 (DLI)(LGD)
                                                            :
SOFTHEON, INC. and CAMPOLO,                                 :
MIDDLETON, & McCORMICK, LLP,                                :
                                                            :
                              Defendants.                   :
------------------------------------------------------------ x

**DORA L. IRIZARRY, U.S. District Judge:**

On October 23, 2023, Cynthia Roethel ("Plaintiff") commenced this action against her former employer, Softheon, Inc. ("Softheon"), and its outside counsel, Campolo, Middleton, & McCormick, LLP ("CMM") (collectively "Defendants"), alleging discrimination and retaliation on the basis of sex and age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"), and the N.Y.C. Admin. Code §§ 8–107 *et seq.* ("NYCHRL").  *See*, Complaint ("Compl."), Dkt. Entry No. 1.  Specifically, Plaintiff alleges that Softheon: (1) gave younger and male employees preferential compensation, advancement opportunities, and recognition; and (2) unlawfully retaliated against her for reporting violations of company policy and corroborating another employee's allegations of discrimination. *Id.* at ¶¶ 23–91.  Plaintiff alleges that CMM aided and abetted Softheon's unlawful conduct by helping it create a pretext to terminate her. *Id.* at ¶¶ 169–79, 207–17.

On December 6, 2023, CMM filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Mot. to Dismiss ("Def's. Mot."), Dkt. Entry No. 9. Plaintiff opposed the motion.  Pl. Opp'n ("Opp'n"), Dkt. Entry No. 12.  CMM replied.  Reply,

Dkt. Entry No. 13. For the reasons set forth below, the primary discrimination and retaliation claims (Counts 1–6, 8–9) are dismissed with prejudice as to CMM. The aiding and abetting claims against CMM (Counts 7 and 10) are dismissed without prejudice and Plaintiff is granted leave to amend the Complaint with regard to CMM's conduct only.

## BACKGROUND

In general, a court's determination of a Rule 12(b)(6) motion is limited to the four corners of the complaint and its exhibits. *See*, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit."). The parties submitted several affidavits and exhibits in connection with this motion, but did not provide any basis for the Court to consider them. *See*, Def's. Mot. at 3–6; *See also*, Dkt. Entry Nos. 9-1, 9-2, 11, 13-1, 13-2, 13-3. Accordingly, the Court disregards such documents in deciding this motion. The following facts are taken from the Complaint and accepted as true for the purpose of deciding this motion. As this motion only relates to the claims against CMM, the Court will focus on the facts relevant to such claims.

Softheon provides cloud based software services for health insurance companies. Compl. ¶ 12. CMM is a New York law firm that Softheon hired as outside counsel in 2015. *Id.* at ¶¶ 4, 9. Plaintiff is a woman over 50 years of age who worked at Softheon for over 20 years in various accounting, controller, and human resources roles. *Id.* at ¶¶ 7, 15–17. Plaintiff eventually became a senior employee who reported directly to Softheon's CEO, Eugene Sayan ("Sayan"), Softheon's CFO, Howard Nolan ("Nolan"), and the board of directors. *Id.* at ¶¶ 13, 22.

Plaintiff alleges that Softheon discriminated and retaliated against her throughout her employment, including by giving younger and male employees preferential compensation, advancement opportunities, and recognition. *Id.* at ¶¶ 23–91. Much of this conduct did not involve CMM. However, Plaintiff alleges that CMM specifically aided and abetted Softheon's unlawful

2

conduct by helping it retaliate against her in response to issues she reported during her employment. *Id.* at ¶¶ 172, 176, 210, 214.

First, Plaintiff claims that, on "several occasions," she reported violations of accepted accounting principles and company policy to Sayan, Softheon's board, and "external counsel." *Id.* at ¶¶ 30–31, 117–18, 136–37, 160–61, 172, 198–99, 210. Several of these issues, such as Sayan's alleged use of company funds for personal purposes, had nothing to do with CMM. *Id.* at ¶ 31. However, some of Plaintiff's complaints directly involved CMM, including that: (1) Joseph Campolo, a partner at the firm, received a position on Softheon's board and preferential stock options that were not offered to Softheon employees; (2) CMM falsely informed an external auditor that it did not charge fees for Mr. Campolo's attendance at board meetings; (3) Softheon hired a former CMM associate in an expedited and preferential manner; (4) CMM charged Softheon for legal services that "appeared to be purely personal to [Sayan]"; and (5) CMM reviewed certain documents and agreements instead of Softheon's Compliance Department or General Counsel, which violated company policy. *Id.* at ¶¶ 31, 172, 210.

Second, Plaintiff alleges that she faced retaliation for corroborating another employee's allegations of discrimination. *Id.* at ¶¶ 32–77. Softheon's General Counsel filed an employment discrimination lawsuit against the company after it terminated her in August 2021. *Id.* at ¶¶ 32–34. On October 19, 2021, Yale Pollack ("Pollack"), one of CMM's attorneys, interviewed Plaintiff regarding the allegations. *Id.* at ¶¶ 35, 39. Plaintiff corroborated the General Counsel's claims and told Pollack that she believed Softheon also discriminated against her on the basis of age. *Id.* at ¶¶ 39–48. Shortly after the interview, the "atmosphere at Softheon changed" and Plaintiff "sensed" that it was treating her differently. *Id.* at ¶¶ 49–50. For example, Softheon did not recognize Plaintiff as part of its leadership team at a company event, and assigned her "remedial

3

tasks" that impeded her ability to get other work done. *Id.* at ¶¶ 51–53, 73. Plaintiff asserts that corroborating these allegations, as well as reporting the violations of company policy and accounting standards, were protected activity pursuant to city, state, and federal law. *Id.* at ¶¶ 117, 136, 160, 198.

Plaintiff claims that, in response to her protected activity, Softheon enlisted CMM to help create a pretext to terminate her employment. *Id.* at ¶¶ 109, 120, 122, 139, 141, 163, 166, 174, 176, 186, 201, 204, 212, 214. As part of Softheon's performance review process, employees submitted self evaluations to discuss with a supervisor. *Id.* at ¶ 55. On November 18, 2021, Plaintiff submitted her self evaluation, which reiterated a "number of [the] issues and concerns that [she] had previously raised with Sayan and/or with Softheon's Board of Directors about accounting matters, hiring and promotion matters, and other matters." *Id.* at ¶¶ 59–60. After submitting her self evaluation, Plaintiff reviewed CMM's invoices in the ordinary course of her duties and discovered that Softheon sent her self evaluation to CMM for review. *Id.* at ¶¶ 61–66. Based on her experience reviewing CMM's invoices, Plaintiff asserts that this was the first time it billed Softheon to review an employee's self evaluation. *Id.* at ¶ 66. Plaintiff claims that Softheon shared her self evaluation with CMM for "what appears to be the purpose[] of creating a pretext of poor performance" and CMM wanted to "punish[]" her for "object[ing] to [its] invoicing; the hiring of the Campolo associate; [and] Joseph Campolo's vesting of shares and his addition to the Board." *Id.* at ¶¶ 174, 176, 212, 214. The Complaint also alleges that CMM "participated [in] and tolerated" all of Softheon's unlawful conduct by "providing Sayan with advice and support in regard to Sayan's actions towards [Plaintiff] [and] actively discriminat[ing] and retaliat[ing] against [Plaintiff] by approving and implementing" the adverse employment actions taken against her. *Id.* at ¶¶ 111, 176, 214

On December 28, 2021, Plaintiff met with Sayan and Nolan for her performance review. *Id.* at ¶ 78. While Plaintiff received a raise after her review, it was low relative to what less experienced Softheon executives received. *Id.* at ¶¶ 79–84. On June 10, 2022, Softheon terminated Plaintiff's employment, claiming that it "lost a big client" and no longer needed her services. *Id.* at ¶ 86. Plaintiff asserts that the grounds for her termination were pretextual because Softheon: (1) did not lose the client at issue; and (2) posted an advertisement to find her replacement shortly after she was terminated. *Id.* at ¶¶ 87–91 & Exs. D, E.

CMM argues that Plaintiff has failed to state a claim because: (1) it did not owe Plaintiff any duty because she was not its client; (2) attorneys are immune from liability to third parties for advice provided in furtherance of their role as counsel; and (3) the allegations regarding its unlawful conduct are too speculative to overcome the immunity. Def's. Mot. at 12–15.

Plaintiff counters that: (1) the Complaint sufficiently alleges that Softheon engaged in discriminatory and retaliatory conduct; (2) CMM "actively participated" in Softheon's unlawful conduct by, *inter alia*, helping it create a pretext to terminate her; and (3) CMM is not entitled to immunity because it did not act in furtherance of its role as counsel. Opp'n at 6–21.

## **DISCUSSION**

### I.   **Legal Standard**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y.*

*Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted).  Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Pleadings that are no more than conclusions are not entitled to the assumption of truth.") (internal quotation marks and modifications omitted).  The court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).

## II.     Primary Liability

City, state, and federal law prohibit employers from discriminating and retaliating against employees on the basis of sex or age.  *See*, 29 U.S.C. § 623 *et seq.*; 42 U.S.C. §§ 2000e *et seq.*; N.Y. Exec. Law §§ 296 *et seq.*; N.Y.C. Admin. Code §§ 8–107 *et seq.*  However, corporate defendants like CMM are not subject to primary liability unless they are the plaintiff's employer.  *Andrade v. Cultural Care, Inc.*, 2023 WL 8622653, at *7 (E.D.N.Y. Dec. 13, 2023) ("For a corporate defendant to be liable for alleged discrimination under Title VII, the NYSHRL, and the NYCHRL, the defendant must qualify as the plaintiff's 'employer.'"); *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370, 374–76 (2d Cir. 2006) (rejecting expansion of Title VII liability to include nonemployers); *DeBernardo v. Lowe's Home Centers*, 2022 WL 377962, at *5 (E.D.N.Y. Feb. 8, 2022), *aff'd*, 2023 WL 2291882 (2d Cir. Mar. 1, 2023) ("The existence of an employer-employee relationship is an essential element of claims under both the ADEA and NYSHRL.").  The analysis used to determine whether an entity is an individual's employer is the same for all of the statutes at issue here.  *Shipkevich v. Staten Island Univ. Hosp.*, 2009 WL

1706590, at *3 (E.D.N.Y. June 16, 2009) (analysis for NYSHRL and NYCHRL "is substantially the same as that used under Title VII"); *Laurin v. Pokoik*, 2004 WL 513999, at *4 (S.D.N.Y. Mar. 15, 2004) (the term "employer" is "construed under Title VII and the ADEA in the same way").

To the extent that the Complaint asserts primary discrimination and retaliation claims against CMM, those claims fail because CMM was not Plaintiff's employer. Indeed, Plaintiff seems to acknowledge as much in her opposition brief. *See*, Opp'n at 16 ("*importantly here . . .* [aiding and abetting liability does not require] an employer-employee or supervisory relationship with the plaintiff." (emphasis added)). Nor are there any facts suggesting that CMM was a joint employer with Softheon. *See*, *Shipkevich*, 2009 WL 1706590 at *3 ("[A] joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees."). Plaintiff does not allege, for example, that CMM had control over her "hiring, firing, training, promotion, discipline, [or] supervision" or "handl[ed] [any]. . . records, insurance, [or] payroll." *Andrade*, 2023 WL 8622653 at *7 (quoting *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022)). Furthermore, Mr. Campolo's alleged position on the board does not make his law firm, an entirely separate corporate entity, Plaintiff's employer. *See*, Compl. ¶ 111. Mr. Campolo is not a party to this action, and the Complaint is devoid of any facts suggesting that he had control over Plaintiff's employment. Accordingly, CMM was not Plaintiff's employer and the primary liability claims against it are dismissed with prejudice. CMM only may be liable as an aider and abettor.

### III.    Aiding and Abetting Liability

The NYSHRL and NYCHRL prohibit "aid[ing], abet[ting], incit[ing], compell[ing] or coerc[ing] the doing" of any unlawful discrimination or retaliation. *Andrade*, 2023 WL 8622653 at *9 (alteration in original, citation omitted). State and city aiding and abetting claims are "subject to the same analysis" because the statutes "use[] virtually identical language." *Dunson v. Tri-*

7

*Maint. & Contractors, Inc.*, 171 F. Supp.2d 103, 113 (E.D.N.Y. 2001).  While aiding and abetting liability is not limited to employers, it "generally [is] reserved for a plaintiff's coworkers or supervisors."  *Patrick v. Adjusters Int'l, Inc.*, 2017 WL 6521251, at *6 (E.D.N.Y. Dec. 18, 2017) (citation omitted); *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187 (2017) ("[N]othing in the statutory language or legislative history [of NYSHRL § 296(6)] limits [its] reach . . . to employers.").

To establish an aiding and abetting claim, a plaintiff must allege that the defendant: (1) "actually participate[d]" in the conduct giving rise to a discrimination or retaliation claim; and (2) "share[d] the intent or purpose of the principal actor."  *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, 2014 WL 5822628, at *18 (E.D.N.Y. Nov. 6, 2014); *McHenry v. Fox News Network, LLC*, 510 F. Supp.3d 51, 68 (S.D.N.Y. 2020); *Tate v. Rocketball, Ltd.*, 45 F. Supp.3d 268, 273 (E.D.N.Y. 2014) ("[T]here can be no partnership in an act where there is no community of purpose.").  A primary discrimination or retaliation claim is a "prerequisite[] for bringing successful aiding and abetting claims."  *Stinnett v. Delta Air Lines, Inc.*, 2019 WL 1493224, at *9 (E.D.N.Y. Mar. 31, 2019) (Irizarry, J.), *aff'd*, 803 F. App'x 505 (2d Cir. 2020).  However, the Court need not address the merits of the underlying discrimination and retaliation claims against Softheon, as the Complaint has failed to allege CMM's "actual participation" or "shared intent."

A.   **Actual Participation**

CMM contends that the allegations regarding its participation are too speculative to survive a motion to dismiss, in part because Plaintiff was not privy to its privileged communications with Softheon.  Def's. Mot. at 14.  In response, Plaintiff points to *conduct* that purportedly shows CMM's participation in Softheon's unlawful acts.  Opp'n at 19.  However, this conduct does not evidence the "actual participation" necessary to state a claim.

Plaintiff's primary theory of liability is that CMM helped Softheon create a pretext to terminate her when it reviewed her self evaluation.  Compl. ¶¶ 59–66.  Based on her experience

8

reviewing CMM's invoices, Plaintiff claims that this was the first time it billed Softheon to review an employee's self evaluation. *Id.* at ¶ 66. However, Plaintiff's assertion that CMM *helped create a pretext* to terminate her based on the fact that it simply reviewed her self evaluation is pure speculation. CMM could have reviewed Plaintiff's self evaluation for any number of legitimate reasons in its capacity as outside counsel. For example, Softheon may have asked CMM to investigate or evaluate the hiring, promotion, and accounting issues that Plaintiff raised in her self evaluation. *Id.* at ¶ 60. Indeed, the Complaint itself speculates that Softheon shared her self evaluation with CMM for "*what appears to be* the purpose[] of creating a pretext of poor performance." *Id.* at ¶¶ 174, 212. Plaintiff has failed to explain how CMM reviewing her self evaluation suggests that it helped Softheon discriminate or retaliate against her.

Second, Plaintiff asserts that Joseph Campolo served on Softheon's board, was Sayan's "longtime friend," and "knowingly participated [in] and tolerated the behavior described in the Verified Complaint." Opp'n at 8, 12; Compl. ¶ 111. However, she has failed to explain *how* Mr. Campolo "actually participated" in Softheon's unlawful conduct. It is not enough to allege that Mr. Campolo sat on the board, received stock options, and was friends with the CEO. *See*, *Nezaj v. PS450 Bar & Rest.*, 2024 WL 815996, at *10 (S.D.N.Y. Feb. 27, 2024) ("Aiding and abetting liability requires actual participation in the conduct giving rise to the claim. It cannot be based on status or job title alone.").

Third, Plaintiff contends that CMM participated in Softheon's conduct because Pollack, one of its attorneys, conducted the interview in which Plaintiff corroborated another employee's allegations of discrimination. Compl. ¶¶ 32–48; Opp'n at 17. However, the fact that a CMM lawyer interviewed Plaintiff does not mean that the firm helped Softheon retaliate in response to her participation in that interview. Pollack's conduct is consistent with the role of outside counsel.

9

The remaining allegations regarding CMM's participation are conclusory. For example, Plaintiff alleges that "Pollack and Joseph Campolo participated in Softheon's actions by . . . providing Sayan with *advice and support* in regard to Sayan's actions towards [Plaintiff] [and] actively discriminated and retaliated against [her] by *approving and implementing* [her] termination and the adverse employment actions taken against [her] before termination." Compl. ¶¶ 176, 214; Opp'n at 19. However, this assertion lacks any factual basis in the Complaint. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) ("It is well established that we need not credit a complaint's conclusory statements without reference to its factual context." (internal quotation marks omitted)). In sum, the allegations regarding CMM's conduct do not support Plaintiff's speculative claim that it provided "advice and support" for or "approv[ed] and implement[ed]" any unlawful conduct. Compl. ¶¶ 176, 214.

**B.      Shared Intent**

Plaintiff contends that CMM "adopt[ed] [Sayan's] improper motives and wishes" and "punished [her] for . . . object[ing] to [its] invoicing; the hiring of the Campolo associate; [and] Joseph Campolo's vesting of shares and his addition to the Board." Opp'n at 5, 19; Compl. ¶¶ 176, 214. However, these allegations are insufficient for several independent reasons.

As an initial matter, it is unclear whether CMM *was even aware* that Plaintiff complained about it, and if so, which complaints it was aware of. Plaintiff alleges that she raised a variety of issues to "Softheon's CEO . . . Softheon's Board, and external counsel," but does not specify *which* complaints CMM was aware of, and how. Compl. ¶ 30. In any event, "[m]ere awareness of a plaintiff's protected activity . . . is not itself evidence that the protected activity motivated an adverse action." *Avery v. DiFiore*, 2019 WL 3564570, at *4 (S.D.N.Y. Aug. 6, 2019) (that defendant "knew of [plaintiff's] protected activity and might have had a reason to dislike it" was not sufficient to allege retaliatory motive). The Complaint does not include facts corroborating

10

CMM's motive, such as negative consequences it may have suffered due to Plaintiff's complaints, or how it stood to benefit from helping Softheon retaliate.

Moreover, while courts may infer retaliatory intent when the "protected activity [is] followed closely in time by adverse employment action," Plaintiff alleges that she raised her complaints on "several occasions" without explaining *when* exactly she did so. Compl. ¶ 30; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "[M]ost courts in the Second Circuit have held that a lapse of time beyond *two or three months* will break the causal inference." *Gooden v. Joseph P. Addabbo Fam. Health Ctr., Inc.*, 2023 WL 2709735, at \*6 (E.D.N.Y. Mar. 30, 2023) (emphasis added, citation omitted). Softheon hired CMM in 2015 and, thus, it is possible that Plaintiff complained about CMM several years before the events at issue. *See*, Compl. ¶ 4. While CMM reviewed Plaintiff's self evaluation, and it documented a "number of [the] issues and concerns that [she] had previously raised," Plaintiff does not specify whether it raised the issues *regarding CMM*. *Id.* at ¶ 60. Without more detail regarding the timing of Plaintiff's complaints, the Court cannot infer that they prompted CMM to align itself with Softheon's retaliatory motive.

## IV.  Attorney Immunity

New York law provides that attorneys are "immunized from liability [to third parties] under the shield afforded [to them] in advising their clients, even when such advice is erroneous, in the absence of fraud, collusion, malice or bad faith." *Beatie v. DeLong*, 164 A.D.2d 104, 109 (1st Dept. 1990). However, "these cases do not stand for the proposition that an attorney can never be liable to third parties for advice to a client, but rather that an attorney is not liable 'in the absence of fraud, collusion, malice or bad faith.'" *Friedman v. Hartmann*, 1994 WL 97104, at \*3 (S.D.N.Y. Mar. 23, 1994) (quoting *Beatie*, 164 A.D.2d at 109).[1]

---

[1] To the extent CMM asserts that it is immune because Plaintiff was not its client, this argument lacks merit. Def's. Mot. at 12–13. As discussed above, attorneys may be liable to third parties if there is evidence of "fraud, collusion,

11

CMM contends that it is immune from liability for claims arising out of legal advice it provided to Softheon. Def's. Mot. at 12–13. Plaintiff counters that CMM was acting on behalf of Sayan "in [its] individual capacity . . . not as a lawyer for Softheon." Opp'n at 10, 19. However, Plaintiff has failed to allege "fraud, collusion, malice or bad faith" sufficient to overcome the immunity.

This case is distinguishable from those in which attorneys have been held liable for aiding and abetting their client's employment discrimination. For example, in *Mondschein v. NY 101, Inc.*, the Honorable Ann M. Donnelly, U.S. District Judge of this Court, denied a motion to dismiss aiding and abetting claims against an attorney where the complaint included "specific examples of [his] direct participation" in the unlawful conduct. 2020 WL 1275471, at *5 (E.D.N.Y. Mar. 17, 2020). There, the plaintiff "repeatedly advised" her supervisors and the attorney that she was being harassed at work. *Id.* at *1–2. In response, the attorney attempted to "harass and dissuade" her from pursuing discrimination claims by: (1) commencing a frivolous lawsuit against her two months after her protected activity; and (2) effectuating service of process in a manner designed to "intentionally humiliate[] and embarrass[]" her. *Id.* at *5. As illustrated by *Mondschein*, attorneys are not completely immune from liability to third parties, but the complaint must include *specific*, *nonspeculative* allegations of their direct participation in the employer's unlawful conduct. *See*, *Rivera v. Balter Sales Co. Inc.*, 2014 WL 6784384, at *4–5 (S.D.N.Y. Dec. 1, 2014) (attorney "stated that he wanted to make an example of [the plaintiff]" for filing EEOC charges, and orchestrated his arrest on false accusations that he stole from the employer).

Here, by contrast, the primary act connecting CMM to any adverse employment action is its review of Plaintiff's self evaluation. From this conduct, Plaintiff speculates that CMM must

---

malice or bad faith." *Friedman v. Hartmann*, 1994 WL 97104, at *3 (S.D.N.Y. Mar. 23, 1994).

12

have conspired with Softheon to retaliate against her because she complained about it in the past. Compl. ¶¶ 122, 141, 166, 176, 204, 214. These allegations are not sufficient to survive a motion to dismiss. *See*, *Pecile v. Titan Capital Group, LLC*, 2011 WL 2941334 (N.Y. Sup. Ct. June 23, 2011) (dismissing aiding and abetting claims against law firm that helped employer sue plaintiff, even though law firm allegedly had a "pattern and practice of bringing preemptive and retaliatory lawsuits").

Even when viewing the facts in the light most favorable to Plaintiff, the Court would need to engage in sheer speculation to allow her claims to survive. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (dismissal is appropriate where the complaint fails to include "factual allegations sufficient to raise a right to relief above the speculative level" (internal quotation marks omitted)). "It is not enough for a plaintiff to allege facts that are *consistent* with liability; the complaint must 'nudge[]' claims 'across the line from *conceivable* to *plausible*.'" *Thompson v. Equifax Info. Servs. LLC*, 2022 WL 2467662, at *3 (E.D.N.Y. Feb. 24, 2022) (emphasis added) (quoting *Twombly*, 550 U.S. at 570). Indeed, "[d]etermining whether a complaint states a plausible claim for relief . . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. While it may be *conceivable* that a law firm could retaliate against its client's employee for lodging complaints against it, it is not *plausible*, particularly when the conduct alleged is completely consistent with the legitimate provision of legal advice. Accordingly, the Court finds that Plaintiff has failed to allege facts sufficient to state a claim against CMM.

## V.     Leave to Amend

Courts may *sua sponte* grant leave to amend. *Straker v. Metropolitan Transit Authority*, 333 F. Supp.2d 91, 102 (E.D.N.Y. 2004). "The Court's discretion is broad and its exercise depends upon many factors, including undue delay, bad faith or dilatory motive on the part of the movant,

13

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Id.* (quotations omitted). This is consistent with the Second Circuit's strong preference for resolving disputes on the merits. *See*, *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). As Plaintiff has indicated that there are additional facts supporting the claims against CMM, and given the early stage of this litigation, Plaintiff is granted leave to amend the Complaint consistent with this Memorandum and Order. *See*, Opp'n at 6 (noting that Plaintiff's affidavit included "additional facts supporting [the] allegations" in the Complaint). Plaintiff may amend the Complaint with regard to allegations about CMM's conduct *only*. Plaintiff's leave to amend shall in no way extend to the allegations regarding Softheon's conduct.

## CONCLUSION

For the reasons set forth above, Defendant Campolo, Middleton, & McCormick, LLP's motion to dismiss the primary discrimination and retaliation claims (Counts 1–6, 8–9) is granted with prejudice. The aiding and abetting claims (Counts 7 and 10) are dismissed without prejudice and Plaintiff is granted leave to amend the Complaint with regard to CMM's conduct only. Plaintiff shall file an amended complaint by no later than October 30, 2024 consistent with this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
          September 30, 2024

                                                           /s/
                                       DORA L. IRIZARRY
                                   United States District Judge